IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT, DECEMBER TERM 1841.—CONTINUED.

## Sands *against* Smith.

On a conveyance of land to one, his heirs and assigns, at a certain rent payable annually, after the expiration of seven years, for 100 years, with a clause of distress, the arrears of rent due at the time of a sheriff's sale of the land on a judgment on mortgage against the terre-tenant, are not payable by the sheriff out of the purchase money, but the landlord may distrain for them.

ERROR to the Common Pleas of *Bucks* county.

This was an action of replevin by Charles Smith and Seneca Beans against Thomas Sands. The defendant, as constable, on the 17th of August 1837, distrained a field of corn and oats 'on the premises of the plaintiffs in Solebury township, Bucks county, on behalf of the Library Company of Philadelphia, in trust for the Loganian Library, for $177.77 arrears of rent-charge due them on the 1st of March 1837.

The following case was stated for the opinion of the court below:

James Logan, for himself, his heirs and assigns, by a certain lease by indenture, dated 26th of May 1747, granted and demised unto Jacob Dean, his heirs and assigns, a certain piece or tract of land situated in the township of Solebury, containing about 200 acres of land, with the appurtenances, in the following words:

III.—2 (9)

" Witnesseth that the said James Logan, for and in consideration of the payment of the several rents hereinafter reserved, and performance of the covenants and agreements hereinafter mentioned, which on the part and behalf of the said Jacob Dean, his heirs and assigns, are, or ought to be observed, performed, and kept, hath granted, &c., unto the said Jacob Dean, a certain piece or tract of land, situate in Solebury township, containing about 200 acres, &c., yielding and paying unto him, the said James Logan, his heirs and assigns, from and after the expiration of the said seven years, for and during the full time of 100 years then next after ensuing, the yearly rent or sum of ten pounds sterling, in English money as the same passes in England, or in foreign good coined gold, equivalent to the same, on the first day of March, yearly ; the first payment of which said last mentioned rent to be made on the 1st day of March, which will be in the year of our Lord 1760–1, &c., and shall be yearly yielded and duly paid to the heirs or assigns of the said James Logan, by the executors, administrators or assigns of the said Jacob Dean, on the 1st day of March, yearly, for ever, &c. ; and if it shall happen that any of the said yearly rents hereby reserved, or any part of any of them shall be behind and unpaid after any of the said days or times of payment, it shall and may be lawful to, and for the said James Logan, his heirs and assigns, or any of them, into and upon the said described tract of land and premises hereby granted, or any part thereof, and into all and singular the buildings thereon erected, or to be erected, to enter and distrain for the said respective rents so behind, and the distress and distresses then and there found and taken to impound, &c. ; and the said Jacob Dean, for himself, his heirs, executors, and administrators doth covenant and promise, and grant, to and with the said James Logan, his heirs and assigns by these presents, that he the said Jacob Dean, his heirs and assigns, shall and will from time to time, for ever hereafter well and truly pay, or cause to be paid unto the said James Logan, his heirs and assigns, every of the aforesaid yearly rents hereby reserved according to the days and times hereinbefore appointed for payment thereof, in manner and form aforesaid, &c. ; and the said James Logan, by a codicil to his last will and testament, conveys his library (known as the Loganian Library) to trustees for the use and benefit of the people of Pennsylvania, and his heirs and executors by deed of trust, dated 25th of March 1760, conveyed to the trustees of the Library Company of Philadelphia, the said rent-charge of £10 sterling, for the use of the Loganian Library; and the said heirs and executors by application to the legislature of Pennsylvania, obtained an Act, dated 31st of March 1792, vesting the said library and rent-charge of £10 sterling in the Library Company of Philadelphia, their successors and assigns for ever, in trust for the support and increase of the said Loganian Library ; and by virtue of a good and suffi-

cient chain of title, Robert Smith, by indenture, dated 30th of March 1824, conveyed the said piece or tract of land, containing about 200 acres, with the appurtenances, to John Bye, subject to the said rent-charge of £10 sterling with power to distrain, &c., as recited in the indenture from the said Logan to the said Dean. The said Bye has paid the said rents up to the 1st of March 1833, from the time of his purchase from the said Smith.

On the 21st of January 1837, the said piece or tract of land was sold by the sheriff to Seneca Beans, by virtue of a *pluries levari facias sur mortgage*, at the suit of Elizabeth Biddle, executrix of Wm. S. Biddle, deceased, against John Bye and terre-tenants, with the following conditions of sale. " The sheriff sells all the rights, title, and interest, present and future, of John Bye, and the purchaser will take, of course, subject to what is called the Loganian claim," which the said Beans, by his signature attached thereto, acknowledged. The said Beans and Ann, his wife, by indenture, dated 1st of April 1837, conveyed an undivided moiety of said piece or tract of land, subject to the aforesaid rent-charge, to Charles Smith. In August 1837, Thomas Sands, constable, of Solebury township, and bailiff of said library company, distrained by virtue of good and sufficient assurances from the Library Company of Philadelphia, in trust for the Loganian Library, upon the said piece or tract of land, the following property, viz : " one field of corn of about 20 acres, now standing growing upon the property, at present in the occupancy of Barnet Pidcock, of the value of $15 per acre; and also for one field of oats, of about 20 acres, on the said property, of the value of $170," which, in the same month, was replevied by the plaintiffs, Charles Smith and Seneca Beans. The distress aforesaid was made for the rents which have accrued and become due upon the said piece or tract of land since the 1st of March 1833, to the 1st of March 1837, amounting, principal and interest, to $193.77 of our currency, the greater part of which was due previous to the sheriff's sale to the said Seneca Beans, but had not been presented to the sheriff for payment out of the proceeds of the sale.

If the court shall be of opinion that the defendant in the replevin, as bailiff, is entitled to receive the said sum of $193.77, with interest from the 1st of March 1837, then judgment to be entered for the defendant; but if he is not so entitled, then judgment to be entered for the plaintiff. , The case to be considered in the nature of a special verdict, and subject to a writ of error.

The court below entered judgment for the plaintiffs.

Error assigned :

The court below gave judgment for the plaintiff on the .case stated, whereas they ought to have given judgment for the defendant.

This case was argued at December Term 1839, by *Rawle* for

[Sands v. Smith.]

plaintiff in error, and *Ross* for defendants in error; and a re-argument directed by the court.

*T. J. Wharton*, (with whom was *Rawle*), for plaintiff in error, contended that the sheriff's sale did not discharge the arrears of ground-rent so as to prevent a distress by the owners of the rent for such arrears. They were not bound to come in on the fund raised by the sheriff's sale. Arrearages of rent are looked on as the rent itself. *Co. Lit.* 162, *a ; Gilb. Rents* 97 ; *Rolls. Ab.* 672. By the 66th section of the Act of 16th of June 1836, concerning executions, purchasers at .sheriff's sales are to take under the same rents and services as the debtor. Here we had no right to re-enter on the land, or any claim to or interest in it: our remedy was confined merely to the goods and chattels happening to be on the premises. How can this be considered a lien on the land? It is true that in *Bantleon* v. *Smith*, (2 *Binn.* 146), the ground landlord was held entitled to come in in preference to a judgment creditor for the arrearages of his rent; but that was the case of an action of covenant brought and judgment obtained, and moreover there was a right to re-enter. The arrearages in the present case resemble interest on a mortgage, which is not discharged by a sheriff's sale. The interest is an incident, and follows the principal. In many instances such rents are payable in kind. *Co. Lit.* 142.

*Ross, contra,* argued that the cases of *Bantleon* v. *Smith*, (2 *Binn.* 146), and *Reed* v. *Reed*, (1 *Watts & Serg.* 239), settled the question. In the latter it was held that arrearages of a widow's third are to be paid out of a sale of the land by the sheriff on a judgment. *Luce* v. *Snively*, (4 *Watts* 397), states the policy of the sheriff's selling free from all liens of which notice exists on record. Wherever the amount can be computed, it is taken out of the proceeds of sale. The exceptions are where it cannot be computed, as of a widow's rent-charge, or of a ground-rent to grow due *in futuro*. The latter is real estate, not a claim to a debt or sum of money which arrearages are. *St. Mary's College* v. *Miles*, 1 *Whart.* 229 ; 1 *Miles* 291. Reserving a right of re-entry makes no difference. It is not noticed in the cases on the subject.

The opinion of the Court was delivered by

GIBSON, C. J. — I have never understood on what principle of lien the case of *Bantleon* v. *Smith*, (2 *Binn.* 151), was decided. It seems to have been taken for granted that every charge on land which is liquidated and due at the time of a judicial sale of it, is to come out of the proceeds as a matter of course—a principle far in advance of the one established by us in *Willard* v. *Norris*, (2 *Rawle* 56) which was so unpalatable to the profession that a statute was procured to overturn it. But though a wholesome one, in the main, it is not of universal application. Arrears of rent do

[Sands v. Smith.]

not come out of the purchase money where the term has been sold; and it required a statute to give preference over the lien of an execution levied on personal.chattels, in favour of the landlord, for even a year's rent.   And what difference is there, in this respect, between real and personal interests?   The statute of *Westm.* 2, which created the lien of a judgment, restrained it to land; but a lien independently of the statute is as applicable to a chattel.   Yet in *Bantleon* v. *Smith* the ground landlord's preference was carried back beyond the lien of his judgment, so as to shut out an intervening one; and if that could be done, he might have come into court for his ground-rent without a judgment for it.   Such indeed was once the practice in regard to purchase money due by the judgment debtor, on the notion, exploded in this state, of the existence, in such a case, of an equitable lien.   There is no more reason that a prospective duty charged on land should follow it into the hands of a sheriff's vendee, than that instalments presently due should follow it; and it could not be tolerated that a ground landlord should be at liberty to throw the arrears of his rent on the lien creditors, or on the purchaser, according to the impulse of his caprice.   The remedy by distress of chattels on the land, is as accessible in the one case as in the other; and there is no legal necessity that the arrears should be taken out of the fund in court. Yet it is not my purpose to disturb, or cast the least shadow on the authority of *Bantleon* v. *Smith*, or to do more than show that it is not founded in any principle of lien peculiar to the reservation of a ground-rent, which it is necessary to carry out further than the decisions have already carried it.   The case of *Nichols* v. *Postlethwaite*, (2 *Dall.* 131), in which a legacy charged on land was allowed to be taken out of the price of it in the sheriff's hands, as well as all others of the same stamp, depend for their authority exclusively on precedent, and their very great convenience, as well as on the policy of giving the sheriff's vendee a clear title, where it is practicable.   But neither policy nor convenience will justify an extension of the principle of them to the price of land which was not liable to be reached for the debt; and in all the precedents the money was not only charged, but there was a means of subjecting the land to payment of it.   In *Bantleon* v. *Smith*, there was a clause of re-entry by which the land itself might be seized, and the produce of it applied, if not at law, yet in equity, to payment of the rent ; and in *Nichols* v. *Postlethwaite*, it might have been sold, on judgment and execution, for the legacy : but it was perhaps the difficulty of reaching it, in either of those ways, as well as the principle of policy, which inclined the courts to apply the proceeds of it, when turned into money.   Now what is the remedy by distress — the only one provided in this conveyance?   It is as much a personal one as an action on a covenant in the deed; it is even more so, as the land may be reached by such an action, while it cannot be reached by a distress, which

[Sands v. Smith.]

operates merely on chattels found upon it.   Though a rent issues out of the land, it is not an encumbrance on it, for a part of the thing demised cannot be reserved; and a distress for it is no more than a means of extorting payment from the personal property of the tenant.   The defendant, therefore, was at liberty to distrain for the arrears due at the sheriff's sale.

Judgment of the court below reversed, and judgment here for the defendant below.