# Wood's Appeal.

A sheriff's sale of a lease of coal mines, wherein there is a reservation of the right to re-enter for non-payment of rent, divests the landlord's right of re-entry, and discharges his lien for arrears of rent due at the time of sale; and such arrears of rent are payable out of the proceeds of sale, in preference to the claims of miners and mechanics.

The landlord is entitled to a year's rent, out of the proceeds of personal property sold on such execution, in preference to the claims of miners and labourers, under the Act 2d April 1849.

APPEAL from the Common Pleas of *Schuylkill county*.

This was an appeal by Thomas Wood and Joseph Wood from the decree of the Court of Common Pleas of Schuylkill county, distributing the proceeds of a sheriff's sale of the personal property of Richard Jones.

[Wood's Appeal.]

On the 3d September 1847, Joseph Wood and Thomas Wood, the appellants, demised to Patrick Fogarty and John Tregay, for the term of ten years, the Westwood Colliery, in Schuylkill county, with the steam-engines, and other machinery, fixtures, and appurtenances. The lease contained a clause reserving the right of distress and of re-entry for non-payment of arrears of rent. The lessees entered upon and, for some time, worked the mines; and in 1853, their interest, by sundry mesne conveyances, became vested in Richard Jones, who attorned to the appellants, and was by them recognised as the tenant of the demised premises, and from that time occupied and worked the mines as tenant under the lease.

On the 3d December 1855, a *fi. fa.* was issued out of the Court of Common Pleas of Schuylkill county, at the suit of Charles T. Wilson & Co. against Richard Jones, by virtue of which the sheriff levied on and sold all the right, title, and interest of Richard Jones in the lease, and all the fixtures in and about the mines, and also all the movable property on the demised premises.

The lease and fixtures were sold for $3112.50, and the movable property for $757.25. At the time of sale, the whole amount of rent due from Richard Jones to the appellants was $4021.67; and of this amount, $2136.61 accrued within one year preceding the sheriff's levy.

The proceeds of sale were claimed by the appellants for arrears of rent; and also by the miners and labourers of Richard Jones, for wages due them, under the provisions of the Act 2d April 1849, *Brightly's Purd.* 835. The court below decreed the fund to the miners and labourers; from which decree this appeal was taken by the lessors.

*E. O. Parry*, for appellants.—The landlords had the right by the covenants of the lease to enter upon and take the term and fixtures in the event of the failure of the tenant to pay the rent, in the same manner that a ground landlord can enter upon and take possession of the fee, under the covenants in a deed conveying the fee simple, reserving rent and the right of re-entry. In both, the claim of the landlord is founded on the deed granting the estate. Under the authority of Bantleon *v.* Smith, 2 *Binn.* 153; Ter Hoven *v.* Kerns, 2 *Barr* 96; and Dougherty's Estate, 9 *W. & S.* 194, the right of the landlord to be paid the arrears of rent out of the proceeds of sale, depends upon the covenant, and relates back so as to shut out any intervening lien that may have fastened upon the estate subsequent to the date of the deed.

This court, in Spangler's Appeal, 12 *Leg. Int.* 351, declared that the principles settled in Bantleon *v.* Smith applied to leases for years in which a right of re-entry was reserved. There is no room, under the authority of this principle, to let in the claim of the miners and labourers, creditors of the tenant, between the lien

of the execution and the date of the deed creating the lien of the landlord: Sands *v.* Smith, 3 *W. & S.* 13; *Comyn on Landlord and Tenant* 566. In Beatty's Appeal, decided at the last term, the claim of the miners and labourers was held to be confined to the proceeds of the sale of the property of those by whom they were employed, and the miners and labourers of a firm were not allowed to participate, in preference to the execution-creditor, in the proceeds of the private property of one of the partners and of his interest in the firm, raised on a separate execution against him.

But there is another objection to the claim of the miners and labourers in this case. The lease was made on the 3d September 1847, and the act under which they claim was not passed until the 2d April 1849. The landlord had a vested interest by his contract that could not be impaired by the passage of the subsequent act: Green *v.* Biddle, 8 *Wheat.* 1; Bronson *v.* Kinzie, 1 *How.* 319; McCracken *v.* Hayward, 2 *How.* 612.

The claim of the miners and labourers to be paid in preference to the landlord, out of the proceeds of the movable property on the demised premises, rests upon even less tenable ground. The Act of 1849 provides that their claims shall be paid " in like manner as rents." This gives them no preference. The best rule by which to arrive at the intention and meaning of the law is to abide by the words which the lawmaker has used: Olmsted's Case, *Bright. R.* 9; *Dwarris on Stat.* 654, 703. No such point was decided in Reed's Appeal, 6 *Harris* 235; or Spangler's Appeal, 12 *Leg. Int.* 351.

*Cumming* and *C. H. Clay*, for appellees.—The principle of this case has been already settled in Reed's Appeal, 6 *Harris* 235, and Spangler's Appeal, 12 *Leg. Int.* 351. The money in court is in part the proceeds of the sale of the lease and fixtures, and in part the proceeds of the personal chattels of the tenant. The latter fund is not entangled in its appropriation by any constitutional question.

As to the residue, it is argued that the appropriation of it to the miners is forbidden by the constitution. But the contract between the parties has not been impaired by the Act of 1849. The right of re-entry, as that of distress, is but a remedy to enforce payment of the rent; and these remedies are in nowise impaired.

A reservation of rent in a conveyance in fee is very different from a reservation in a lease for years: Dougherty's Estate, 9 *W. & S.* 194. The law allows all secret liens: Commonwealth's Appeal, 4 *Barr* 164; Kauffelt *v.* Bower, 7 *S. & R.* 73.

The prohibition to pass any law impairing the obligation of contracts, can avail nothing, unless the case comes exactly within

[Wood's Appeal.]

it: Satterlee *v.* Matthewson, 2 *Pet.* 414; Sharpless *v.* Mayor of Philadelphia, 9 *Harris* 164, 165, 185; Spencer's Appeal, 3 *Casey* 218. Retrospective laws have always been sustained where they touched not the right but the remedy: Bolton *v.* Johns,, 5 *Barr* 149; Evans *v.* Montgomery, 4 *W. & S.* 220; Satterlee *v.* Matthewson, 16 *S. & R.* 178.

The sheriff's return shows that the lessors were the purchasers, and went into possession. This is an extinguishment of their lien, if any existed: Phillips *v.* Bonsall, 2 *Binn.* 138; *Co. Litt.* 147 *b*; Phillips *v.* Clarkson, 3 *Yeates* 128; Brown *v.* Simpson, 2 *Watts* 244; Crawford *v.* Boyer, 2 *Harris* 380; Pierce *v.* Potter, 7 *Watts* 475; Berger *v.* Hiester, 6 *Wh.* 210; Gilkeson *v.* Snyder, 8 *W. & S.* 200.

The opinion of the court was delivered by

LOWRIE, C. J.—The word lien is of the same origin as the word liable, and the right of lien expresses the liability of certain property for a certain legal duty, or a right to resort to it in order to enforce the duty.

We said this when considering the case of Sibley *v.* Colt, on the Appeal of Spangler, not reported;(*a*) and that decision illustrates

(*a*) In Spangler's Appeal from the decree of the Court of Common Pleas of Schuylkill county, argued at March Term, 1855, the following opinion was delivered by

LOWRIE, J.—The defendants were lessees of certain contiguous coal mines, at a rent per ton, payable monthly, enforceable by action, by distress, and also by a stipulated right to re-enter and forfeit or annul the lease for arrears, without thereby discharging the lessees from their personal liability. This leasehold estate was taken in execution at the suit of the plaintiff and sold, the lessees being considerably in arrears for rent; and this raises the question, —Had the lessors such a lien upon the estate of the lessees as is discharged by the sheriff's sale?

The word lien is of the same origin as the word liable, and the right of lien expresses the liability of certain property for a certain legal duty or a right to resort to it in order to enforce or secure the duty.

It is plain enough, therefore, that a covenant for re-entry to secure the arrears of a perpetual rent by applying the profits to that purpose constitutes a lien on the estate charged with the rent, as was decided in Bantleon *v.* Smith, 2 *Binn.* 146, and has often been repeated since: 13 *State R.* 302; and it would not be any extension of the principle to declare that it applies to an estate for life or for years where there is a similar covenant.

But the right of entry in the present case is to forfeit the estate without discharging the arrears. It may be said, therefore, that the right of entry neither enforces nor secures the arrears; and how then can it be called a lien for the arrears? Yet it would seem strange that the inherently more efficient remedy by entry to forfeit the estate should be less a lien upon the estate or impose less liability upon it than the less efficient remedy by entry to receive the profits in payment of the arrears. A right of entry upon a man's own mines to work them for the benefit of the lessees might be a very inefficient remedy.

In this case, we must distinguish between actual entry and the right of entry. It is the latter that constitutes the lien if there be any. The former does not secure the arrears, while the latter may, and certainly it was intended

[Wood's Appeal.]

the definition, and follows out the principle of Bantleon *v.* Smith, 2 *Binn.* 146, and applied it to cases of a judicial sale of a lease for years, where the landlord has reserved a right to re-enter for arrears and annul the lease.

That right is reserved in the present instance, and therefore the landlord has a lien for his arrears on the proceeds of the sale of the tenant's estate. The question now is:—does this lien take pre-

to prevent arrears. The right of entry is a means of securing the full execution of the consideration of the lease, and may be effectual for the purpose; it is a lien upon or liability of the estate for the duties of the tenure, and this character would be clearly revealed if we should leave it charged upon the estate in hands of sheriff's vendee.

There is an apparent difficulty here arising out of a resemblance between this conventional lien and the legal remedy for non-payment of rent provided by the Landlord and Tenant Act, 1830, a resemblance which may seem to require that the rule in Bantleon *v.* Smith should now be extended to all leases, though it was not noticed in Sands *v.* Smith, 3 *W. & S.* 9. It is, however, for the present, a sufficient solution of this difficulty, to suggest that to give such an effect to that act would seem to extend it much beyond its intention.

We are of opinion that the present case falls precisely within the principle of Bantleon *v.* Smith, that the right of entry constitutes a lien for the rent in arrear, that the right to exercise it for those arrears was taken away by the sheriff's sale, and that the lessors are entitled to share in the distribution.

But the money in court is in part the proceeds of personal chattels, some of which were and some of which were not liable to distress for rent. The miners are the first claimants against the whole fund of these three classes of property. As the whole is liable to the miners, and each class is differently liable to other conditions, the payment to the miners must reduce each class proportionably. Then there will remain for distribution of the proceeds of the leasehold, $1196.33; of the personal chattels liable to distress, $1266.53; and of those not so liable, $1266.50.

Now assuming, as seems to be done in our paper-books, that the lessor's claim is for one year's rent, they must have the whole of the second part of the fund by virtue of their right to distrain, and they take the first by virtue of their right of entry and independently of any question of time and still are not paid, and the third must go to the execution-creditors in their order.

DECREE: May 17th 1855.—This cause came on to be heard at the late March Term of this Court, on an appeal by Christian E. Spangler and others, from the decree of the Court of Common Pleas of Schuylkill county, making distribution of the proceeds of the sheriff's sale in the case of Sibley and others *v.* Colt and others, and was argued by counsel, and now on mature consideration it is ordered, adjudged and decreed, that the decree of the said Court of Common Pleas be reversed and set aside; and this court now proceeding to make such decree in the case as the said Court of Common Pleas ought to have made, it is further ordered, adjudged and decreed, that the money in court, $2462.86, be paid to the said Christian E. Spangler and others, the lessors of the defendants; $382.27 to John Gilbert & Co. in payment of his *vend. exp.* No. 49, April Term 1851; $227.29 to the plaintiff in the *fi. fa.*, No. 6, of the same term; that the costs in this court be paid out of the fund, and that the balance be applied in part payment of *fi. fa.* No. 39, of April Term 1851 (the names of the plaintiffs in these two writs are not given in the paper-books); and the cause is remanded to the said Court of Common Pleas, with directions to carry the decree into effect.

[Wood's Appeal.]

cedence of the claims of the miners, labourers, and mechanics, for the debts owed by the tenant in his mining operations?

We think it does, though the Act of Assembly does not say so. The legislature never intend to do anything that is unreasonable or dishonest, and we must, if possible, always avoid giving an interpretation to their acts that would make them appear so. They intend to give to miners a preference in the distribution of the proceeds of judicial sales of the property that truly belongs to their employer; but not that other people's property shall be taken to pay them.

Now, when the law declares that a landlord's right to resume his title for arrears of rent is discharged by a judicial sale, it sells not only the tenant's right, but also a part of the landlord's. And since this right of the landlord is a contract right, the constitution, as well as honesty, forbids us to suppose that the legislature intended to impair it.

The law does not intend to impair it by selling it out, but to substitute for it its legal equivalent, the payment of the arrears it was intended to secure, if the right will bring that much. It is public convenience, the avoidance of protracted disputes about liens, the certainty of titles, the safety of purchasers, and the wish to secure the highest price; and not the inherent virtue of the execution against the tenant, or any merit of his or his creditor, that require that the sale shall discharge the landlord's lien or right of re-entry; and the law would have to reject the practice, useful as it is, if it had the effect of selling one. man's rights in order to pay another man's debts. By such a sale the landlord's right is converted into money, which is brought into court as his, and of course he alone is entitled to claim it there. The price is increased at the sale, because the law sells the landlord's right of re-entry, and he, and not the tenant or his creditors, is entitled to the benefit of the increase.

And this result coincides with the plain intention of other parts of the law; for one section gives the miners a preference in case of an assignment, and another in case of death. In neither of which cases would the landlord's lien on the leasehold be discharged, for a private sale would not affect it. The court below was wrong in not applying the proceeds of the leasehold to the landlord's claim.

The decree in the case of Sibley v. Colt was not inconsistent with these views; and, whatever was said in the opinion that seems inconsistent with them, must be accounted for on the ground that we were not considering the subject in the special aspect in which it is now presented.

We come now to the consideration of the rights of the landlord against the proceeds of the movable property taken on the pre-

[Wood's Appeal.]

mises.   Does the law of 1849 take away from the landlord, in favour of the miners and labourers, the priority to which he was entitled by the law, as it stood in 1847, when the lease was made ?

This question arises on the third section of the Miners' Act of 1849; and it is difficult to see how any one reading it can raise such a question.   It allows miners a new remedy for their claims, by declaring that they may present them for payment to the sheriff, and that they shall be paid " in like manner as rents are now payable in such cases."   But it says not a word about the *order* of payment, and therefore it does not affect the priority that was given to landlords by previous laws.   The law was not made to change the right of the landlord, but to give a new and speedier remedy to the miners against the property of their employers.

Besides this, the landlord had, by express contract, made before the Act of 1849, a right of distress for his rent; and by law a preference over all other claims, in case the goods on the premises should be sold on execution, and this is presumed to have entered into the contract; and we cannot suppose that the legislature meant to disregard these considerations.   Legislation never intends to set aside the claims of justice and of right in favour of mere benevolence; and of this we have a quite recent and well known illustration in the exemption law of 1849.   The landlord is entitled to a preference over the miners; and, as the proceeds of the sale are not sufficient to pay the rent, the whole must go to him.

> DECREE.—This cause having been argued by counsel, and duly considered by the court, it is now here ordered, adjudged, and decreed, that the decree of distribution made by the Court of Common Pleas be reversed, and that the whole fund in court, after paying the sheriff's costs of levy and sale, be paid to the appellants, the landlords of the defendant, Joseph and Thomas Wood, on account of the rent due to them, and that the appellees pay the costs of the audit and of this appeal, and the record is remitted to the Common Pleas in order that this decree may be carried into effect.