# New York and Cleveland Gas Coal Company versus Plumer et al.

1. Certain real estate was sold for a consideration to be paid in instalments the legal title to be retained by the vendor as security until the purchase-money was paid in full when a deed was to be made by the vendor. The time of payment of certain instalments was extended by the vendor. The equitable owner sold his interest to another party who paid him in full for the land. The first vendee did not make his final payments and became insolvent. In ejectment by the assignee of the legal owner, *held*, that the legal owner was not affected by any of the transactions of the equitable owner; that one purchasing from him was bound to notice the lien of the legal owner; that the purchaser from the equitable owner had the rights of the latter and no more, and that his purchase conferred upon him no new or peculiar equities.

2. Such purchaser stood precisely as an ordinary vendee who buys land subject to a mortgage or judgment and who thereby requires the rights of the vendor and nothing more.

3. The agreement of the original vendor with the vendee to extend the time of payment could work no possible harm to the terre-tenants.

November 4th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. PAXSON and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1880, No. 249.

Ejectment by Samuel, A. A. and H. B. Plumer, executors of

Arnold Plumer, deceased, against the New York and Cleveland Gas Coal Company, to recover several tracts of land, coal, railroads, &c., situate in Penn township, Allegheny county.

The facts were found as follows by the court, Stowe, P. J.:

That the legal title was in F. C. Negley on the 13th of April 1863, at which date said Negley and wife, by articles of agreement recorded, agreed to convey to Dickson, Stewart & Co. the properties described in the writ, inter alia, for and in consideration of certain annual and other payments, the last of which, for $6600, matured in 1874, with a right of extension of payment for one year longer upon the part of Dickson, Stewart & Co.; that Dickson, Stewart & Co. conveyed the said properties, August 10th 1864, to Kier, Foster & Kier, they, the said Dickson, Stewart & Co., remaining paymasters of the said purchase-money to said Negley; that the title of said properties by various conveyances and for a full consideration (without any personal agreement to pay any of the payments to Negley as between them and Dickson, Stewart & Co.), finally vested in the defendants by deed of Samuel M. Kier and wife, dated December 31st 1872; that said Negleys, by their deed dated August 5th 1870, recorded October 26th 1870, assigned to Joseph McKinney the last instalment of purchase-money agreed to be paid by the said Dickson, Stewart & Co. to said Negley, under the said article of agreement, with his personal guarantee for the payment of the same by the vendees, and that said McKinney, by his deed, dated October 26th 1870, assigned the same to the plaintiffs; that said instalment thus assigned matured in 1874, but that under said articles the vendees, Dickson, Stewart & Co., had the right to extend the payment of said instalment for one year longer, which extension expired in 1875 ; that the interest on said instalments was paid by the vendees, Dickson, Stewart & Co., personally to the plaintiffs from the date of their purchase of it down to the time when payments thereof ceased; there is no evidence that plaintiffs had any actual knowledge at the time of their purchase, or prior to the maturity of the instalment purchased, that said Dickson, Stewart & Co. had parted with their equitable title; that the vendees, Dickson, Stewart & Co., claimed the extension of payment of said instalment as provided for in said original articles from 1874 to 1875, which plaintiffs agreed to ; that said plaintiffs, at the request of Dickson, Stewart & Co., extended the time of payment thereof one year, viz., from 1875 to 1876, which extension was without the knowledge or consent of defendants ; that said plaintiffs, at the request of Dickson, Stewart & Co., and without the knowledge or consent of the defendants, in consideration of the assignment to them of certain bonds and mortgages, &c., extended the time of payment of said instalment for one other year, from 1876 to 1877, said assignment and extension being under seal, dated May 25th 1876, and recorded; that Dickson, Stewart & Co.

[N. Y. and Cleveland Gas. Coal Co. v. Plumer.]

became insolvent in 1877, and Robert Dickson and Thomas C. Dickson went into bankruptcy; that said proceedings were so proceeded with that a composition in full satisfaction of the debts of Dickson, Stewart & Co. was decreed; that in the statement of creditors, the plaintiffs, with their post-office address, and the amount of their secured claim appear as secured creditors, and in the statement of assets the securities held by them are specified, and that they had notices as required by law of said proceedings; that said plaintiffs made no demand for the valuation by the said court of their said securities, so as to participate in the said composition; that the securities deposited with said plaintiffs have not all been converted by plaintiffs, nor have they made any effort or demand to have them realized upon, but that $1002.57, in September 1877, came into their hands, and that another sum of $2700.57 remains in the hands of Charles Meyran, which he claims to be held for the use of himself and others, not including plaintiffs; that the plaintiffs have never made any demand on the defendants for the payment of the said instalments assigned; that Felix C. Negley made a voluntary assignment for the benefit of his creditors to Graham Scott, on the 10th of April 1876; that the said Graham Scott held no other or greater interest in the legal title to said properties described in the writ than said Felix C. Negley held at the time of his said deed of voluntary assignment; that said Graham Scott made conveyance of said legal title to the plaintiff for a nominal consideration.

Defendants presented the following points, to which are appended the answers of the court:

1. That the title imparted by the deed of Graham Scott, voluntary assignee, gives no higher title than Scott himself would have had, had such deed not been made, viz., the legal title as security for the unpaid instalment due by Dickson, Stewart & Co. on the original articles in trust for plaintiffs, the holders of such obligation.

Ans. "Affirmed."

2. Such conveyance is at any rate without consideration, and void for any further purpose.

Ans. "Affirmed."

3. That the land claimed in this action stands in the relation of surety for the debts of Dickson, Stewart & Co. under the articles between them and Negley, to the holders, the plaintiffs.

Ans. "Affirmed."

4. That the defendants, as such sureties, are entitled to be subrogated to the securities and evidences of indebtedness held by plaintiffs.

Ans. "Refused so far as this case is concerned."

5. That the extension of the time of payment of the instalment due, accorded by the plaintiffs to Dickson, Stewart & Co. under the

[N. Y. and Cleveland Gas Coal Co. *v.* Plumer.]

assignment of May 25th 1876, was for a valuable consideration, and its effect was to discharge the surety.

Ans. "Refused."

6. That under the proceedings in composition of the Dicksons, the plaintiffs are precluded from maintaining any personal action against the Dicksons, their debt having been scheduled as a secured claim of which they had notice.

Ans. "Refused."

7. That their failure to have their securities appraised and their implied assent to the sufficiency of these securities to pay the debts for which they were held, discharged the surety.

Ans. "Refused."

8. That under the assignment of Negley to McKinney, through whom the plaintiffs claim, the legal title is not a security therefor.

Ans. "Refused."

9. That the finding of the court should be in favor of the defendants.

Ans. "Refused."

Defendants excepted to the foregoing answers so far as the same were refused.

The court then entered the following judgment: "Under the foregoing facts and questions of law raised by the defendants' points, we think the plaintiffs are entitled to a judgment against defendants for the amount of their claim, and therefore judgment is now directed to be entered for plaintiffs for six cents damages and costs, to be released upon payment to plaintiffs by defendants of $7111.50 within thirty days from this date."

The defendants excepted, and the court overruled the exceptions, when defendants, inter alia, alleged the court erred, as follows : In overruling objections to the admission of the deed of the voluntary assignee, Graham Scott, under which plaintiffs below sought to maintain their ejectment. In finding that there is no evidence that plaintiffs had any actual knowledge at the time of their purchase, or prior to the maturity of the instalments purchased, that Dickson, Stewart & Co. had parted with their equitable title. And in the refusal of the above points of defendants.

*S. Schoyer, Jr.*, for plaintiffs in error.—As between the terre-tenants and Dickson, Stewart & Co., the latter were fully paid by the former, and the debt due by the articles was the debt of Dickson, Stewart & Co., and was rightfully to be paid by them. The plaintiffs below were the creditors, Dickson, Stewart & Co. were the principal debtors, and the land, held in lien by the legal title, was the surety for the debt. We submit that the land, upon paying the debt, was entitled to be subrogated to the position of the vendor of the articles, and have the recourse which he had thereon against the principal debtors : McCormick's Adm'r *v.* Irwin, 11

[N. Y. and Cleveland Gas Coal Co. v. Plumer.]

Casey 117 ; Bassett v. Baird, 4 Norris 387 ; Chamberlain v. Williams, 9 Barr 342.

The plaintiffs by giving time put it out of their power to make cession to us of their remedies against Dickson, Stewart & Co., and we were thereby deprived of our right of subrogation.

The plaintiffs were also bound by the composition in bankruptcy. They had due notice and made no objection. The creditor who accepts composition discharges the surety: Ex parte Wilson, 11 Vesey 410 ; Wharton v. Duncan, 2 Norris 43. Having thus put it out of their power, by the extension and by the discharge in composition, to give us the remedies they had possessed against Dickson, Stewart & Co., and having also compelled themselves to accept the collaterals as of the full value of their debt in 1879, they shortly before the commencement of this ejectment, demanded payment from us, and in default, instituted this suit.

C. S. Fetterman and Sutton & Plumer, for defendants in error. —Negley had a lien on the land for his unpaid purchase-money : Stokely v. Trout, 3 Watts 163. An assignment by him of any portion of that purchase-money would also carry with it the security for its payment : Perkins v. Gibson, 51 Miss. 699 ; 24 Am. Rep. 644 ; McClintic v. Wise's Adm'r, 25 Grattan (Va.) 448 ; 24 Am. Rep. 694. The plaintiffs in error knew that Negley's transfer was made expressly subject to the payment of the balance of purchase-money, and that the last payment would not fall due until in 1874 ; yet knowing all these things they saw fit to take a title imperfect and inchoate on its face, and in so doing they took it subject to all the equities as that title stood in the hands of the grantor.

Dickson, Stewart & Co. being no more than sureties for the payment of the balance of the Negley purchase-money assumed by defendants, plaintiffs were not bound to look to them alone for their money. If time was granted for the payment of the money, defendants have enjoyed the advantage. If collaterals were received from the surety as additional security for the payment of the money, defendants have not been injured thereby. The plaintiffs were not bound to exhaust the collaterals before proceeding on their claim.

Whether Dickson, Stewart & Co. were principal debtors or mere sureties, having assigned to plaintiffs certain mortgages as collateral security for the payment of their claim and afterwards filed their petition in bankruptcy, the plaintiffs were not bound to follow them into the Bankrupt Court, surrender their securities and take a dividend, if any, out of their estate.

Mr. Justice GORDON delivered the opinion of the court, November 22d 1880.

[N. Y. and Cleveland Gas & Coal Co. *v.* Plumer.]

The facts of this case of themselves sufficiently resolve all the questions presented for our consideration, and, at the same time, effectually dispose of any equities supposed to be possessed by the defendants.

On the 13th of April 1863, Felix C. Negley and wife, by articles of agreement, sold the land in dispute to Dickson, Stewart & Co. for the sum of $78,880, payable in annual instalments, as therein set forth, and agreed to make a deed to them upon full payment of the purchase-money. Thus was the legal title retained as security for the payment of that purchase-money, and so it must remain until that money is fully paid. Dickson, Stewart & Co. might, indeed as they have done, sell their equity to third parties, but such sale could, in no jot or tittle, alter the standing of the vendor. As to him such parties are but volunteers, for they have come into the transaction on their own motion, for their own benefit, and without his invitation or assent. To him they are under no personal tie or obligation, and he can reach them only through the land which they hold under the condition that they pay the purchase-money. The vendees of Dickson, Stewart & Co. have but the rights of their vendors and nothing more, and by their purchase they have procured no new or peculiar equities. What then does it amount to that Kier, Foster & Kier, when they bought of Dickson, Stewart & Co., were foolish enough, instead of taking upon themselves the payment of the purchase-money which they had in their hands, to trust that matter to their vendors? Or how is Negley or the plaintiffs, his vendees, to be affected by a transaction to which they were entire strangers. Or to carry the matter one step further, how is it that the defendants, the vendees of Kier, Foster & Kier, have by their purchase entitled themselves to the position of sureties of Dickson, Stewart & Co.? As we have already said, as to Negley they are but volunteers; personally, they owe him nothing and he owes them nothing. When they bought they found an encumbrance upon the land which they knew they must pay before they could acquire a perfect title, and they not only had the means in their hands to pay that encumbrance, but they agreed with their vendors to pay it in common with all other liens against the premises. They did not pay it, and they now set up as a reason why they should be released from their obligation to pay that the plaintiffs, Negley's vendees, bound themselves to Dickson, Stewart & Co. for an extension of the time for payment mentioned in the original articles of agreement. But *quære*, what possible harm did this work to them? They stand precisely as an ordinary vendee who buys land subject to a mortgage or judgment, and who thereby acquires the rights of his vendor and nothing more. If the mortgage or judgment is due he has the right to pay it off, and no subsequent agreement for extension of payment between the mortgagee or judgment-cred-

itor and the vendor can affect that right, hence such agreement does him no harm. This is exactly the position of the defendants; when they bought they knew the legal title was outstanding in Negley, and that to get it they must pay for it. What harm then was done to them by the extension given by the plaintiffs to Dickson, Stewart & Co.? Their right of payment was not abridged, and whenever they chose to pay they were entitled to the deed. But it is said they would be entitled to more than this: an assignment of the articles between Negley and Dickson, Stewart & Co., in order that through them they might enforce against these parties their agreement with Kier, Foster & Kier to pay this purchase-money. But after the execution and delivery of a deed, what right would remain in Negley or his vendees by which a repayment of the purchase-money could be enforced against any one, and to what purpose would be an assignment? But let us suppose that such an assignment would keep alive the personal covenants for the purpose of settling equities between these subsequent parties, what would be gained by this roundabout over an action on the agreement between Dickson, Stewart & Co. and Kier, Foster & Kier? Here was an agreement unencumbered by any stipulations, and one on which the defendants might have proceeded for indemnity, if indeed they had any such right, just as soon as they had paid the purchase-money. It follows, that if they have been delayed in the pursuit of Dickson, Stewart & Co. for indemnity it has arisen from their own neglect, and not by reason of the extension of payment granted by the plaintiffs to the defendants' vendors.

Now, as concerning the collaterals which passed to the Plumers as a consideration for the extension of the time of payment, it is enough to say that credit was given for all that was realized from them, and that they remain unimpaired by any act of the plaintiffs. These collaterals consist of mortgages, held in common with other parties, and, if we are to believe the undisputed testimony, they have been pursued with due diligence and care, and all has been realized from them which care and skill could realize. As regards these, neither Dickson, Stewart & Co. nor their vendees have anything of which to complain.

Furthermore, complaint is made that in the proceedings in bankruptcy against Dickson, Stewart & Co. the defendants neglected to prove their claim, have their securities appraised and thus entitle themselves to a dividend. The answer to this is, that as their securities were sufficient to cover their debt, even by the Bankrupt Act, they were entitled to retain and depend upon them for the payment of their claim. Moreover, it would have been to no purpose to have had the securities appraised, which, including the legal title, in value exceeded their debt. Under such circumstances they would have been entitled to no dividend.

As to the deed executed by Negley's assignee to the plaintiffs, the defendants have no standing to complain of that. In the first place, the plaintiffs were entitled to it, for the legal title follows the assignment of the purchase-money as a mortgage follows the assignment of its bonds. In the second place, in the hands of the assignee it was but a naked legal title without value; hence, as the creditors of Negley have no interest to object to the transaction, third parties will not be allowed to interpose.

Judgment affirmed.

SHARSWOOD, C. J., dissented.