417 A.2d 1227

**ANDERSON CONTRACTING COMPANY, a corporation,**

**v.**

**David DAUGHERTY and Pearl Currie, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1978.

Filed Dec. 28, 1979.

14

James M. Shilliday, Pittsburgh, for appellants.

Gary Kalmeyer, Pittsburgh, for appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

CERCONE, President Judge:

This appeal finds its origin in an amicable action in ejectment instituted by plaintiff-appellee, Anderson Contracting Company, against defendant-appellants, David Laugherty and Pearl Currie. The action, which was commenced pursuant to a warrant of attorney contained in an installment land contract entered into by the parties, arose as a result of appellants' failure to make prompt installment payments under the land contract. A judgment in ejectment was confessed against appellants and execution pro-

ceedings initiated. Presently before us is an appeal from the order of the court below denying appellants' petition to cure default, to stay execution, and to open or strike the judgment.

The facts are as follows. On March 26, 1974, appellant-vendees entered into an installment land contract with appellee-vendor for the purchase of a residential dwelling located in Allegheny County. Under the terms of the contract, appellants agreed to pay appellee the sum of $24,-567.98 as follows: $367.98 on the signing of the contract and the balance of $24,200.00, together with interest at 8¼% on the unpaid balance, in monthly installments of $181.81 until paid in full. Although appellants took immediate possession and assumed all the burdens and incidents of ownership, the contract provided that the deed to the premises would not be delivered until appellants paid all sums due. The contract further provided that in the event appellants failed to make timely payment and continued in default for thirty days, appellee could then confess judgment against them in an amicable action of ejectment.

Appellants failed to make their monthly payment in September of 1975 and appellee confessed judgment against them in December of 1975. Appellants subsequently cured this default and appellee did not execute. Appellants next defaulted in June of 1976. Once more, however, they cured their default prior to execution and remained in possession. In January of 1977, appellants defaulted for the third time. This time, however, appellants filed a petition to open or strike the confessed judgment. On May 13, 1977, the petition was dismissed pursuant to an agreement between the parties whereby appellee agreed not to execute on the judgment prior to July 13, 1977, if appellants paid $400.00 at the date of agreement and an additional $300.00 prior to June 13, 1977. On July 29, 1977, appellants filed a petition alleging that appellee had refused to accept their payment of a sum sufficient to cure all prior default under the contract; and, therefore, requested the court to stay execution, to direct appellee to accept the cure, and to open or

strike the original confessed judgment. The petition was denied and this appeal ensued.

Appellants contend that a vendee in a land sale installment contract for the purchase of a residential dwelling has the right to cure a default thereunder in accordance with the provisions of Act No. 6 of January 30, 1974, P.L. 13, 41 P.S. § 101 et seq. (Supp.1979). Under Section 404(a) of Act No. 6, supra, 41 P.S. § 404(a), a default may be cured "at any time at least one hour prior to the commencement of bidding at a sheriff sale or other judicial sale on a residential mortgage obligation . . . ." Appellees, on the other hand, maintain that the instant transaction is governed by the "Installment Land Contract Law," Act of June 8, 1965, P.L. ——, No. 81, 68 P.S. § 901 et seq. (1965). Thus, the issue we must resolve is whether a vendee in land sales contract of the kind we have described should be permitted to cure a default in the same manner granted to a residential mortgagor under Act No. 6 supra. For the reasons which follow, we hold that the instant transaction falls within the purview of Act No. 6.[1]

In essence, Act No. 6 is a comprehensive interest and usury law which, among other things, provides for a floating interest rate on "residential mortgages" and, most importantly, affords certain basic protections to "residential mortgage debtors." Accordingly, the crux of this case is whether

---

1. Neither the parties nor the court below have maintained that the Installment Land Contract Law contains any provision relating to cure. However, to the extent that Section 4 of the Act, 68 P.S. § 904 (1965) may be so construed, we note that "[w]henever the provision of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail." Statutory Construction Act, 1 Pa.C.S. § 1936 (Supp. 1978). This will be so in instances where the earlier statute more specifically relates to the problem at hand so long as it is the "manifest intention of the General Assembly" that the later statute prevail. Id. at § 1933. However, whether there is a conflict between cure provisions in the Installment Land Contract Law and Act No. 6, and consequently, whether the latter should prevail is a question not before us. But see *Carsek Corp. v. Stephen Schifter, Inc.*, 431 Pa. 550, 558, 246 A.2d 365, 369–370 (1968). Consequently, we shall not raise it *sua sponte* and decide it.

the instant transaction qualifies as a "residential mortgage" as that term is defined in Act No. 6.

■ Section 101 of Act No. 6 defines "residential mortgage" as:

"an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or in which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit." [2]  41 P.S. § 101(f).

Thus, for a transaction to qualify as a "residential mortgage" four elements must coalesce: (1) an obligation to pay an original bona fide principal amount of $50,000 or less, (2) evidenced by a "security document," (3) secured by a lien upon real property in Pennsylvania, and (4) containing two or fewer residential units or on which two or fewer residential units are to be constructed.  Only elements (2) and (3) are at issue in this case.

■ The lower court concluded that the instant transaction did not qualify as a "residential mortgage" because the appellant-vendees obligation to pay money was not evidenced by a "security document."  In reaching this conclusion the court relied upon the fact that Act No. 6 defines a security document as "a mortgage, deed of trust, real estate sales contract or other document creating upon recordation a lien upon real property." [3]  41 P.S. § 101(f).  The lower court

2.  The General Assembly has recently elaborated upon this definition by adding the following:

"The term 'residential mortgage' shall apply only to transactions where the principal purpose of the transaction is the purchase of, or improvement or repair in connection with the acquisition of, residential real property, but does not include a transaction in which no purpose of the transaction is the purchase, improvement or repair of residential real estate."  Act of October 5, 1978, No. 258, S.B. No. 1540, Purdon's Pa.Legis.Serv. No. 6 (1978).

3.  The General Assembly has also recently amended this definition by adding the following: "A note or other instrument or document, other than a residential mortgage as defined by this act, evidencing

held that since the parties installment land contract had not been recorded it did not qualify as a "security document." In our view, the lower court's emphasis upon the necessity of the recording of the contract, rather than whether it could have been recorded, was erroneous.

Section 601 of Act No. 6 directs the Secretary of Banking to "prescribe regulations to carry out the purposes of this act." 41 P.S. § 601. In accordance with this broad authority, the Department of Banking has promulgated several regulations designed to clarify various provisions of Act No. 6. Most importantly, the Department of Banking has ruled that the term "security document" shall include the following:

"(i) *An installment land contract, land contract, or lease purchase agreement.* It shall also include any similar document if it is a lease of real property where the lessee pays or agrees to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the real property involved and it is agreed that the lessee will become, or for no other (or a nominal) consideration has the option to become, the owner of the real property upon full compliance with the terms of the agreement.

(ii) *Any document containing a confession of judgment which, when confessed, effects a lien upon real estate.*" (Emphasis added.) 10 Pa.Code § 7.2, PP. 2.11–2.12.

Accordingly, it cannot be disputed that the installment land contract here reviewed qualifies as a "security document" for the purposes of Act No. 6.

an obligation for the payment of money is not a security document within the meaning of this act by reason of an authorization for the entry of a judgment by confession against the obligor if the obligation for the payment of money does not arise out of or in connection with the acquisition by the obligor of real property containing not more than two residential units or on which not more than two residential units are to be constructed or if the obligation arises out of a transaction subject to any statute within the scope of the first sentence of section 604 of this act." Act of October 5, 1978, footnote # 2, supra.

As to the requirement that the transaction be secured by a lien, the lower court held that "[t]he courts of this jurisdiction have long recognized the so-called lien which a vendor has before a conveyance, and which consists of his retention of title as security for the performance of the contract of the vendee. The lien created by the vendor's retention of the life estate has all the incidents of a mortgage, and is a lien upon the subject land for the unpaid purchase money. *Stokely v. Trout*, 3 Watts 163 (1834); *New York & Cleveland Gas Co. v. Plumer*, 96 Pa. 99 (1880); *In Re Deardorf*, 17 F.2d 294 (D.C.M.D.1927)." Lower court opinion at 22a–23a. As a general proposition, we agree with the learned trial court. However, it should also be acknowledged, as appellee points out, that "[a] person cannot own an article and at the same time have a lien upon it." *Atlantic Finance Corp. v. Kester*, 156 Pa.Super. 128, 136, 39 A.2d 740, 744 (1944). See also *Penn Mutual Life Ins. Co. v. Finkel*, 428 Pa. 11, 235 A.2d 396 (1967); *Anania v. Serenta*, 275 Pa. 474, 119 A. 554 (1923); *Day v. Ostergard*, 146 Pa.Super. 27, 21 A.2d 586 (1941). As one commentator has perceptively stated: "To call the vendor's security interest a lien seems a misnomer in view of the fact that he actually retains legal title to the property. It would be more accurate to maintain that the seller may enforce his interest in the property as a lien, rather than to insist that his interest is itself a lien." (Footnote omitted.) Comment, *Forfeiture: The Anomaly of the Land Sale Contract*, 41 Albany L.Rev. 71, 76–77 (1977). See also, Auten, *A Review of the Pennsylvania Usury Law (Act No. 6 of 1974)*, 46 Pa.B.A.Q. 38 (Jan. 1975). Notwithstanding this apparent contradiction, several factors convince us that the framers of Act No. 6 did not intend the "fit" be so tight that the lien requirement be met with absolute precision.

Initially, despite an opinion[4] by the Attorney General to the contrary, it is obvious that the Regulations promulgated

---

4. In the course of an opinion concerning the applicability of Act No. 6 to vacation home sales, the Attorney General concluded that the requirement that the obligation be secured by lien is not satisfied where the vendor simply retains legal title. See 68 D.&C. 355, 364

by the Department of Banking support an expansive construction of the term "lien." As one practitioner[5] in this area of the law has cogently observed:

"[T]he inclusion of 'land contract,' a 'lease' and any 'document containing confession of judgment which, when confessed, effects a lien upon real estate' reveals the apparent interpretation of the Department of Banking that the term 'lien' in the Act was not used in the strict sense. The Regulations imply that the term 'lien' includes an estate or interest in real property and an 'inchoate lien' in a document which permits the lender to obtain an actual lien without further action by the borrower."

Secondly, it must be recognized that the term "lien" expresses a broad concept embracing a variety of security devices both legal and equitable. "The word lien is of the same origin as the word liable, and the right of lien expresses the liability of certain property for a certain legal duty, or a right to resort to it in order to enforce the duty." *Wood's Appeal*, 30 Pa. 274, 277 (1858). Moreover, it is well established that "[a]n express executory written contract sufficiently indicating an intention to make some particular property or fund therein identified a security for a debt or other obligation creates an equitable lien on the property so indicated which is enforceable against the property. . ." (Citation omitted.) 22 P.L.E., *Liens* § 3 at 376–77. In short, a lien may be viewed as a party's right to proceed against a certain piece of property to enforce an obligation.

Under the typical installment land contract, such as in the case at bar, the vendee takes possession and makes periodic installment payments until the balance of the contract price is paid. Legal title to the property is, however, retained by the vendor until the terms of the contract are satisfied. Retention of title by the vendor serves as security for the vendee's performance of the contract. In essence,

(1974). We are not persuaded by the Attorney General's opinion and decline to follow it.

5. Auten, *A Review of the Pennsylvania Usury Law (Act No. 6 of 1974)*, 46 Pa.B.A.Q. 38, 43 (January, 1975).

then, a vendor who retains title has an interest which, although strictly speaking is not a lien, may be enforced as though it were. 92 C.J.S., *Vendor & Purchaser* §§ 378–380. "There can be no sensible distinction between the case of a legal title conveyed to secure the payment of a debt and a legal title retained to secure such payment." Lee, *The Interests Created by the Installment Land Contract*, 19 U. of Miami L.Rev. 367, 375 (1965). In other words, as the Supreme Court of Indiana so aptly stated: "Conceptually, therefore, the retention of the title by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance." *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641, 646 (1973) (collecting cases from other jurisdictions). We find this analysis persuasive and reflective of the current trend in this country.[6] Accordingly, we adopt it and conclude that a real estate security transaction, such as the instant land installment contract, should not be denied treatment as a "residential mortgage" solely because the vendor retains legal title as security for payment of the contract price. In short, we hold that for the purposes of Act No. 6 a vendor under a land installment contract will be deemed to be "secured by a lien upon real property . . . ."

■ Lastly, we note, our agreement with the sentiments of the court in *H & L Land Co. v. Warner*, 258 So.2d at 296:

**6.** See also, *H & L Land Company v. Warner*, 258 So.2d 293, 295 (Fla.App.1972) ("We hold that the vendor under a specifically enforceable installment land sale contract, who has received part of the purchase and has given the vendee possession of the land and the benefits and burdens of ownership, is in essentially the same position as a vendor who has conveyed the legal title and taken back a purchase money mortgage, and he cannot unilaterally and summarily extinguish the vendee's equitable title upon the vendee's default."); Osborne et al., *Real Estate Finance Law*, §§ 3.25–3.32 (1979); Uniform Land Transactions Act—Secured Transactions—§ 3–101 et seq. Section 3–102 of said Act abandons transparent or form distinctions between transactions which are "intended to create a security interest in real estate."

"With respect to rights, remedies, and safeguards, we believe that there should not be substantial differences based solely upon whether the buyer's obligation to pay the deferred portion of the sale price is evidenced and secured by an installment land sale contract or by a purchase money mortgage. In the absence of statutory direction to the contrary, we seek by our holding to afford well-established safeguards to an installment buyer and to allow an installment seller a reasonable and traditional remedy."

It is our opinion that the rights and remedies provided by Act No. 6, in particular, the cure provisions of Section 404 of the Act, 41 P.S. § 404, should not be denied to a class of Pennsylvania home purchasers solely because their obligation to pay the balance of the purchase price is evidenced and secured by a land installment contract as opposed to some other transaction also designed to create a security interest in real estate. Substance must prevail over form.

For all of the foregoing reasons, the order of the court below is reversed and the case remanded.