In re Gregory B. MISKOWSKI, Debtor.

WESTERN POCONO ESTATES, INC., Movant/Objector,

v.

Gregory B. MISKOWSKI, Respondent.

Gregory B. MISKOWSKI, Plaintiff,

v.

WESTERN POCONO ESTATES, INC., Defendant.

Bankruptcy No. 5–93–02156.
Adv. No. 5–94–0047A.

United States Bankruptcy Court, M.D. Pennsylvania.

March 22, 1995.

---

**6**

Joseph Murray, Stroudsburg, PA, for debtor.

Joseph Yannuzzi, Brodheadsville, PA, for Western Pocono Estates, Inc.

Charles DeHart, Trustee in Bankruptcy, Hummelstown, PA.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Before this court are the consolidated matters of a Motion for Relief from the Automatic Stay filed by Western Pocono Estates, Inc., the Objection to the Chapter 13 Plan of the Debtor by Western Pocono Estates, Inc., and the Complaint of the Debtor, Gregory B. Miskowski, for Declaratory Judgment.

On June 12, 1984, the Debtor and his non-debtor spouse, Agnes N. Miskowski, entered into an agreement with Western Pocono Estates, Inc., ("Western"), for the sale of real estate wherein Western would sell a parcel of land located at Lot 1004 at Rossland Lake, Ross Township, Monroe County, Pennsylvania, for the sum of Ten Thousand Dollars ($10,000.00) payable within sixty (60) days. The seller agreed to finance the purchase with a loan of Nine Thousand Dollars ($9,000.00) over an eight (8) year term at an interest rate of 13.5%. The contract provided that time was "of the essence" (paragraph 12 of the agreement) and possession was to be delivered at the time of settlement (paragraph 10).

For reasons that are unclear, settlement never took place although the buyer went into possession. Despite the specific terms of the agreement, on or about August 1, 1984, the Debtor began a series of periodic payments to Western pursuant to an amortization schedule which provided that payments of One Hundred Fifty–Three and 80/100 Dollars ($153.80) per month would be made for a series of ninety-six (96) months.

The Debtor made irregular payments until March of 1992 when the delinquency was such that an action in ejectment was filed in state court by Western.

On November 18, 1993, Debtor and Western entered into a settlement stipulation whereby the Debtor would pay to Western the sum of Seven Thousand Dollars ($7,000.00) on or before December 10, 1993 or agree that the county court would enter an order of ejectment. The parties were represented by different counsel at that time.

The Debtor now maintains that this sales contract was, in effect, an installment sales contract which should be treated as a security interest under state law pursuant to *Anderson Contracting Co. v. Daugherty*, 274 Pa.Super. 13, 417 A.2d 1227 (1979).

If this is treated as a security interest, then the Debtor, in a manner of a mortgagor,

would be entitled to repay the "arrearage" over the life of the Chapter 13 plan.

■ On the other hand, if the contract in question was executory in nature, the Debtor would be obligated to assume or reject that contract before confirmation [*11 U.S.C. § 365(d)(2)*] and, if assumed, cure all defaults within a reasonable period of time. Contrary to the arguments of the Debtor, the definition of executory contracts is a matter of federal law. *In re Terrell,* 892 F.2d 469 (6th Cir.1989); *Cameron v. Pfaff Plumbing and Heating, Inc.,* 966 F.2d 414 (8th Cir. 1992); *In re Cochise College Park, Inc.,* 703 F.2d 1339 (9th Cir.1983); *In re Streets & Beard Farm Partnership,* 882 F.2d 233 (7th Cir.1989).

The definition espoused by Professor Vern Countryman in his well-known treatise on executory contracts has been accepted by the Supreme Court and our circuit. *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 522–26, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984) and *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.,* 872 F.2d 36, 39 (3rd Cir.1989). That treatise defines executory contracts as "... a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." **Professor Vern Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973).**

The contract in question bears little resemblance to the current relationship of the parties. The legal owner of the property is Western Pocono Estates, Inc.. The Debtor is in possession and apparently has constructed a dwelling of sorts and has leased that property out to others. The local sewage enforcement officer is currently pursuing the owner, Western, with regard to violations on the property. The property taxes have been paid by Western even though the Debtor has offered to address same in his Chapter 13 plan. The court concludes that the initial agreement for sale of real estate dated June 12, 1984 has been modified into an installment sales contract with a stipulated arrearage of Seven Thousand Dollars ($7,000.00) payable on or before December 10, 1993. Because that sum of money was not paid on or before December 10, 1993, the contract was effectively terminated by agreement since the parties had stipulated that "an order of ejectment" would be entered in lieu of trial.

The Chapter 13 bankruptcy filed on December 17, 1993 cannot resurrect a terminated installment sales contract. *In re Internet Realty Partnership,* 26 B.R. 383 (Bankr. E.D.Pa.1983).

■ Although Pennsylvania law abhors forfeitures (*In re C & C TV & Appliance, Inc.,* 97 B.R. 782 (Bankr.E.D.Pa.1989), it does recognize the validity of a seller declaring a forfeiture if there is a failure to make the payments during a stipulated time. See *Weaver v. Griffith,* 210 Pa. 13, 59 A. 315 (1904). We have said so much in an earlier opinion. See *In re Romberger,* 150 B.R. 125 (Bankr.M.D.Pa.1992).

We are certainly aware of a multitude of cases which suggest that an installment sales contract is, in effect, a security interest and should therefore be treated as same rather than an executory contract with all of its onerous burdens such as an abbreviated time to cure and a possible loss of all accumulated "equity". *Heartline Farms, Inc. v. Daly,* 934 F.2d 985 (8th Cir.1991) affg. *Heartline Farms, Inc. v. Daly,* 128 B.R. 246 (D.Neb. 1990). But see *Cameron v. Pfaff Plumbing and Heating, supra* at n. 1 which suggests that *Heartline* applied state law only because of an agreement between the parties. *In re Booth,* 19 B.R. 53 (Bankr.D.Utah 1982); *In re Fox,* 83 B.R. 290 (Bankr.E.D.Pa.1988) which lists at 296 various additional cases supporting this proposition; *In re Paoeglio,* No. 1–92–01171, slip op., 1995 WL 465339 (Bankr.M.D.Pa. May 21, 1993); and *In re Gochenour,* No. 1–91–00147, slip op. (Bankr. M.D.Pa. May 19, 1993).

Executory contracts, while not defined by the Bankruptcy Code, are clearly addressed in Section 365. Indeed, Professor Countryman suggests that, historically, the courts have had such little difficulty in fashioning a workable definition that reference in the statute was not of urgent necessity. **Professor Vern Countryman, *Executory Contracts in***

*Bankruptcy: Part II,* 58 Minn.L.Rev. 479, 563 (1974).

Even though Pennsylvania law may consider an installment sales contract as akin to a security interest, "... state courts' characterization of the contract seems irrelevant." **Professor Vern Countryman,** *Executory Contracts in Bankruptcy: Part I,* 57 Minn. L.Rev. 439, 466, n. 106 (1973).[1]

> "Certainly, a contract under which the vendee still owes the material part of the purchase price and the vendor has not transferred title, and is not obligated to do so until that price is fully paid, is an executory contract." **Professor Vern Countryman,** *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 469 (1973).

To suggest that somehow this arrangement between the parties can be classified as a security interest would, in this court's opinion, do violence to the clear interpretation of the statute.

A security interest is defined by the Bankruptcy Code as a "lien created by an agreement". *11 U.S.C. § 101.* Such security interest is plainly not present in the documents at issue.

> "The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, [242] 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). [Citation omitted.]

It is for these reasons that the court issues the attached Order.

### ORDER

The Motion of Western Pocono Estates, Inc. for Relief from the Automatic Stay is hereby granted.

The Objection of Western Pocono Estates, Inc. to the Debtor's Chapter 13 Plan is hereby sustained.

---

1. "What constitutes an 'executory contract' within the meaning of the Bankruptcy Act is no more to be determined by how the state characterized the contract for other purposes than is the meaning of 'property' in § 70(a)(5) to be determined

The Complaint of the Debtor, Gregory B. Miskowski, asking for a declaration that the agreement in question is equivalent to a security interest is disposed of by rejecting said conclusion and deeming the agreement terminated pre-petition.

---

by state characterizations for other purposes." **Professor Vern Countryman,** *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 456, n. 71 (1973).