In re Elaine P. LOVE, a/k/a Elaine L. Goodwin, Debtor.

Elaine P. LOVE, a/k/a Elaine L. Goodwin, Plaintiff,

v.

Loyal J. KRADEL and Juliana K. Kradel, Defendants.

Loyal J. KRADEL and Juliana K. Kradel, Plaintiffs,

v.

Elaine P. LOVE, a/k/a Elaine L. Goodwin and Richard G. Kagan, Defendants.

Bankruptcy No. 82–0649–L.
Adv. Nos. 82–844–L, 82–0732–L.

United States Bankruptcy Court, D. Massachusetts.

May 10, 1983.

Foster Jay Cooperstein, Cooperstein & Cooperstein, Cambridge, Mass., for debtor.

David Hern, Jr., Dane, Howe & Brown, Boston, Mass., for Kradels.

MEMORANDUM AND PROPOSED ORDER

THOMAS W. LAWLESS, Bankruptcy Judge.

The issue before the Court is whether the Debtor may avoid the interest retained

by the vendor of real property under an installment land contract involving the Debtor's purchase of land in Pennsylvania. The parties agreed to stipulate to the facts and submit this matter on briefs. For the reasons set forth below,[1] I hold that the vendor's interest is not avoidable.

## FACTS

On September 2, 1980, Elaine P. Love, a/k/a Elaine L. Goodwin ("Debtor" or "Vendee") entered into an Article of Agreement ("Agreement") with Loyal and Juliana Kradel ("Kradels" or "Vendor"). Under the Agreement, the Debtor contracted to purchase certain property located in Pennsylvania from the Kradels for the sum of $47,000 to be paid as follows: $7,000 on or before September 2, 1980, with the balance of $40,000, due on or within three years, with monthly payments of $425.00 per month to be applied first to interest on the outstanding balance at the rate of 12¼% percent per annum and then to the principal balance outstanding. The Debtor took immediate possession of the premises and assumed all the burdens and incidents of ownership. Under the Agreement, however, the Vendor retained title to the property and was not obligated to tender the deed to the Debtor until the full purchase price was paid. In the event that the Debtor failed to make timely payments and continued in default for sixty (60) days, the Agreement contains a "confession of judgment" clause whereby the Vendor could call the entire amount due and an attorney could appear for the Debtor and confess judgment against her in an amicable action of ejectment for the premises. On September 11, 1980, the Agreement was recorded in Butler County, Pennsylvania. The Kradels secured a judgment pursuant to the confession of judgment clause less than 90 days prior to the filing of the Debtor's Chapter 7 case on April 20, 1982.

This matter has come before the Court in the context of two adversary proceedings. The proceeding in *Kradel v. Love* is one to lift the automatic stay so that the Kradels may foreclose under the Agreement. The Vendor seeks to foreclose because the Debtor is in default in her payments under the Agreement. The parties have stipulated that the present value of the premises is $39,500. The Debtor owes the Vendor approximately $39,000 under the Agreement. The Debtor in *Love v. Kradel*, however, asserts that the Agreement did not create a mortgage or similar lien upon the property. The Debtor argues that the Kradels hold nothing more than a judicial lien, which arose from the confession of judgment clause contained in the Agreement. As such, the Debtor contends that the lien can be avoided pursuant to 11 U.S.C. § 522(f)(1) to the extent it impairs her exemption in the property. Treating the Debtor's complaint to avoid the lien first, I find as follows:

## DISCUSSION

The parties are in accord that the Agreement is an installment land contract governed by the law of Pennsylvania. Absent some overriding federal interest, the Court will look to the law of Pennsylvania regarding the property interests of the respective parties in the assets of this estate. *See Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Hackett*, 23 B.R. 710 (Bkrtcy.E.D.Pa.1982).*

---

1. This opinion constitutes the Court's findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

* A debtor's complaint to avoid a judicial lien under § 522(f)(1) involves the exercise of powers that exist only under the Bankruptcy Code and thus, since this proceeding could not "have been brought in a district court or state court," Emergency Rule (d)(3)(A), this proceeding is arguably a non-related, "arising under" proceeding as to which a bankruptcy judge may enter a final order. But *see* Emergency Rule (d)(3)(A) (Complaints to avoid liens not specifically listed as non-Related Proceedings.). The last sentence of subsection (d)(3)(A) cautions that a "proceeding is not a related proceeding merely because the outcome will be affected by state law." As noted in *In re Adirondack Railway Corporation*, 28 B.R. 251, 10 B.C.D. 256 (Bkrtcy.N.D.N.Y. 1983), the interpretation of paragraph (d)(3)(A) turns upon the meaning of "affected." If the bankruptcy court must merely *apply* state law then the proceeding is not a related one. How-

■ Under Pennsylvania law a confession of judgment for money contained in a note creates a lien, not by the agreement, but by the judgment obtained when the creditor files the promissory note and the action of the prothonotary in issuing the D.S.B.[2] *E.g., In re Ashe,* 669 F.2d 105 (3d Cir.1982), vacated on other grounds, 459 U.S. 1082, 103 S.Ct. 563, 74 L.Ed.2d 927 (1982); *In re Burkholder,* 11 B.R. 346 (Bkrtcy.E.D.Pa.1981); *In re Natale,* 5 B.R. 454 (Bkrtcy.E.D.Pa.1980). Under the Bankruptcy Code "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b)[3] of this section, if such lien is—(1) a judicial lien...." 11 U.S.C. § 522(f)(1). The Bankruptcy Code defines the term "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(27). The term "lien" is defined in the Code as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(28). Since the lien that arises from a confession of judgment clause arises by a judicial process and is intended for security, all courts in Pennsylvania which have considered the problem have held that such lien is avoidable under section 522(f)(1). *E.g., In re Ashe, supra,* at 108; *In re Burkholder, supra,* at 349; *In re Natale, supra,* at 458.

■ The Kradels, however, point to the fact that none of the reported decisions from Pennsylvania have dealt with install-ment land sale contracts. The creditors argue that where a vendor retains legal title to property under an installment land sale contract, this retained interest constitutes a property interest that is equivalent to a mortgage or security interest under Pennsylvania law. Since the charge against the property arises from the voluntary agreement of the parties and not from the confession of judgment, the Kradels contend that this interest is not avoidable under 11 U.S.C. § 522(f)(1). I agree.

■ A contract for the sale of land operates as an equitable conversion; the vendor's interest becomes personalty and he holds legal title for the vendee to the extent of the vendee's payment while the purchaser is trustee of the vendor as to the purchase price. *McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982); *Vogel v. Northern Assurance Co.,* 219 F.2d 409 (3d Cir. 1955); *Long John Silver's Inc. v. Fiore,* 386 A.2d 569, 255 Pa.Super. 183 (1978). The vendor's interest is a "security title" which has all the incidents of a mortgage and constitutes a charge against the subject land for the purchase price. *Vogel v. Northern Assurance Co., supra,* at 411; *Anderson Contracting Co. v. Daugherty,* 417 A.2d 1227, 274 Pa.Super. 13 (1979); *Ives v. Cress,* 5 Pa. 118 (1847). While the Vendor's retained interest is not strictly a lien because one cannot own an article and at the same time have a lien upon it, *Atlantic Finance Corp. v. Kester,* 39 A.2d 740, 744, 156 Pa.Super. 128, 136 (1944), this distinction has not prevented Pennsylvania courts from considering the vendor's interest a lien. In *Anderson Contracting Co.*

---

ever, if the bankruptcy court must "interpret" state law, then the proceeding is a *related* one. Since the decision in the instant case is dependent upon the Court's *interpretation* of Pennsylvania law, I find that this proceeding is a related proceeding as to which the Court may not enter a final order. Accordingly, this Court's discussions, conclusions of law and proposed order will be submitted to a United States District Judge for the District of Massachusetts for consideration consistent with the Emergency Rule and the Supreme Court's decision in *Northern Pipeline Construction v. Marathon Pipe Line Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

**2.** DSB is the abbreviation for "debet sine breve" signifying a debt without suit or a debt evidenced by a confession judgment.

**3.** Subsection (b), 11 U.S.C. § 522(b)(1) provides that "an individual debtor may exempt from property of the estate ... property that is specified in subsection (d) .... "Subsection (d), 11 U.S.C. § 522(d)(1), provides for an exemption of "[t]he debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor ... uses as a residence...."

*v. Daugherty, supra,* at 1232, the Pennsylvania Superior Court, after discussing various authorities who have held that the retention of title by a vendor is essentially equivalent to a mortgage, held:

> We find this analysis persuasive and reflective of the current trend in this country. Accordingly, we adopt it and conclude that a real estate security transaction, such as the instant installment land contract, should not be denied treatment as a "residential mortgage" solely because the vendor retains legal title as security for payment of the contract price. In short, we hold that for purposes of Act No. 6 [4] a vendor under a land installment contract will be deemed to be "secured by a lien upon real property." . . . Substance must prevail over form.

Thus, a vendor who retains legal title under an installment land contract involving residential property is entitled to the protections afforded to residential mortgagees under Pennsylvania law. *Id. See also H & L Land Company v. Warner,* 258 So.2d 293, 295 (Fla.App.1972); *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641, 646 (1973) (collecting cases from other jurisdictions).

Moreover, without any further action the execution of installment land contract creates a trust which embraces the purchase money and fastens itself upon the land. Once recorded, the vendor's interest is incapable of being defeated by any subsequent purchaser from the vendee. *See Kaffelt v. Bower,* 7 Serg. & R. 64, 74 (1821) ("he [the vendor] has the legal title, which will prevail against all the world, before the vendee has paid the purchase money, or done whatever else may be required to enable him [the vendee] to call for a conveyance, he [the vendor] stands in need of nothing more; he [the vendor] has what is better than equitable lien; he has title itself."); *Appeal of Vierheller,* 24 Pa. 105, 62 Am.Dec. 365 (1854) (purchaser at sheriff's sale of vendee's equitable title takes subject to the payment of such part of the purchase as remains unpaid); *New York & Cleveland Gas Coal Co. v. Plumer,* 96 Pa. 99, 28 P.L.J. 439 (1880) (purchaser from equitable owner of land takes subject to the lien for unpaid purchase money, which may be enforced against him by ejectment).

■ It is a universally recognized rule that one who has entered into possession of land under an executory contract of sale is estopped from denying or questioning his vendor's title for the purpose of defeating the agreement or the rights of the vendor thereunder. *See Vendor and Purchaser,* 77 Am.Jur.2d, § 343 (1975). The estoppel extends to one who acquires possession from the vendee, including a trustee in bankruptcy. *See Lewis v. Hawkins,* 90 U.S. 119, 23 L.Ed. 113 (1874) (under Arkansas law, neither the vendee's discharge in bankruptcy nor the expiration of a statute of limitations relating to the enforcement of the underlying note will prevent the "vendor's lien" from being enforced against the subject land).

■ Since the law governing secured transactions in Pennsylvania does not apply to the creation of an interest in or a lien on real estate, 13 Pa.Con.Stat.Ann. § 9104 (Purdon), the recordation of the installment land contract was all that was necessary to protect the vendor's interest against subsequent purchasers. *See generally McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982) (in a situation converse to the instant case, Pennsylvania's definition of constructive knowledge prevents the trustee from avoiding the unrecorded interest of a purchaser of a condominium unit pursuant to § 544(a)(3)). In the instant case, the Kradels' charge against the subject property was created by the Agreement and its recordation and not by the confession of judgment, which was merely the method for enforcing the prior created property right.

■ Pennsylvania's characterization of a vendor's interest under an installment

---

**4.** Act No. 6, January 30, 1974, PL. 13, 41 P.S. § 101 et seq. (supp.1979), is essentially an interest and usury law which provides for a floating interest rate on residential mortgages and, among other things, provides certain basic protections to "residential mortgage debtors."

**776**

land contract as a security interest in real property does not offend the definition of liens contained in the Bankruptcy Code.[5] Title 11 U.S.C. § 101(36) defines "security agreement" as an "agreement that creates or provides for a security interest." "Security interest" means "lien created by an agreement." 11 U.S.C. § 101(37). "Lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(28). The legislative history of the Code acknowledges security interests in real property other than by mortgage. The Senate Report No. 95–989; 95th Cong.2d Sess. (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5812. *See In re Carr,* 18 B.R. 794 (Bkrtcy.E.D.Pa.1982). The Kradels' indefeasible interest in the property arose from the Agreement that created a charge against the property to secure repayment of a debt. In view of this and Pennsylvania's treatment of an installment land sale contract such as in the instant case as a mortgage transaction, *Anderson, supra,* the Vendor's interest is considered a security interest for the purposes of the Bankruptcy Code. *See generally In re Climer,* 10 B.R. 872 (D.C.D.Tenn.1977) (Although an installment land contract was not recorded and no mortgage or deed of trust was executed to secure the note given the vendor by the bankrupts, the vendor was entitled to secured creditor status in the property under Tennessee law, where the vendor had retained legal title and not merely equitable title); *Matter of Himberger,* 9 B.R. 278 (Bkrtcy.D.Neb.1981) (Under Nebraska law, if the instrument transferring estate in land is originally intended as security for debt, transaction is a mortgage regardless of form).

Accordingly, it is the Court's opinion that the Debtor's complaint to avoid the Kradels' lien should be denied, it further being the opinion of the Court that the matters raised herein are such that the Emergency Rule and the Supreme Court decision in *Northern Pipeline* mandate the full consideration of an Article III court, the Court stays the effect of today's opinion until such review can be obtained. *See* Emergency Rule (e)(2)(A)(ii). As the matters raised in the instant case are so inextricably intertwined with the Kradels' complaint for relief from stay, a further hearing on said complaint will await the District Court's decision.

---

5. Nor does Pennsylvania's grant of secured status to vendors under a land sale contracts for the balance of the purchase price conflict with other substantive provisions of the Bankruptcy Code. 11 U.S.C. § 365(i)(2) provides that if the trustee rejects an executory contract for the sale of real property under which the purchaser is in possession, then the purchaser must make all payments due under the contract if the purchaser wishes to remain in possession of the premises.