**Carl Junior ANNIS, Irene Anna Annis, Plaintiffs,**

v.

**FIRST STATE BANK OF JOPLIN, and Paul Williamson and Betsy A. Williamson, Defendants.**

No. 86–5164–CV–SW–0.

United States District Court, W.D. Missouri, Southwestern Division.

March 30, 1987.

Order on Second Appeal Sept. 30, 1988.

Susanna Jones, Legal Aid of Western Missouri, Joplin, Mo., for Carl Junior Annis and Irene Anna Annis.

Robert L. Bradley, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, Mo., for First State Bank of Joplin.

Gayle L. Crane, Donald E. Sotta Law Firm, Joplin, Mo., for Paul & Betsy Williamson.

## ORDER

ROSS T. ROBERTS, District Judge.

This matter comes before the court on appeal from a bankruptcy court decision denying appellants' complaint to set aside a foreclosure sale pursuant to 11 U.S.C. § 548. For the reasons stated below, the cause will be remanded for further proceedings consistent with this order.

### I. *Statement of the Case*

The property in dispute is appellants' residence, which they owned for some 32 years, having purchased it for $1,500; it consists of two houses situated on four acres of land. On July 3, 1984, appellants borrowed $2,250.00 from First State Bank of Joplin (bank), and secured the loan with a deed of trust on their home. On August 1, 1985, the bank foreclosed on the residence to recover an outstanding balance due of $1,961.52. At the foreclosure sale, held October 10, 1985, Paul and Betsy Williamson were the successful bidders for the sum of $4,500.00. The balance due on the note, together with interest and the cost of the sale, brought the bank's tally to $2,684.18; the bank retained the remaining $1,815.82 as its "lawful profit."

In March of 1986, appellants filed a voluntary Chapter 13 petition, and on April 3, 1986, filed a complaint to have the foreclosure set aside. The transfer of an interest in property made within one year of the date of the filing of a bankruptcy petition may be avoided if the debtors: (1) received less than a reasonably equivalent value in exchange for the property; and (2) were insolvent on the date of the transfer or were rendered insolvent as a result of the transfer. 11 U.S.C. § 548(a)(2)(A) and (B)(i).

The bankruptcy court found that the transfer was not for a reasonably equivalent value, but that the debtors had failed to establish insolvency:

> The trouble with plaintiffs' claim, however, is that no evidence of insolvency has been shown. The plaintiffs did not even advert to the schedules in this regard.... It seems an unfortunate result under the circumstances, but this court, as any other court, can decide cases only on the basis of the evidence properly submitted to it. And there being no evidence of insolvency, the transfer cannot be regarded as fraudulent within the meaning of § 548(a)(2) of the Bankruptcy Code.

Thus, rather than avoiding the sale, the court simply ordered the bank to return the excess sum of $1,815.82 to appellants.

### II. *Discussion*

As a threshold matter, appellee has moved to strike the debtors' joint Chapter 13 petition and accompanying documents and filings; the bank's objection to the confirmation of the debtors' plan and motion to dismiss; the debtors' reply to the bank's objection and motion; and the docket sheet for the bankruptcy file. Appellee argues that these items were not offered or received in evidence during the adversary proceeding, nor were they the subject of a request to take judicial notice. Appellants counter that the adversary proceeding is part of an integrated whole, and note that the bankruptcy judge used the value placed upon the residence in the schedules filed in connection with the petition for Chapter 13 relief in determining whether a reasonably equivalent value was obtained at the foreclosure sale.

The critical inquiry, and one central not only to the motion to strike but to the disposition of this appeal, is whether the bankruptcy court may take judicial notice, sua sponte, without notice to the parties, of

documents contained in the bankruptcy file. It is not always clear from the decisions whether the issue of judicial notice was raised in the adversary proceeding; there are, however, at least a few decisions where it clearly was not. In the case of *In re Leach*, 35 B.R. 100 (Bkrtcy.W.D.Ky. 1983), the evidence at trial was inconclusive on a key issue, but plaintiff argued that the record taken as a whole permitted a finding in its favor. The court held that it was not strictly bound by evidence adduced at the hearing, and that it could properly "take judicial notice of the entire bankruptcy file, including the petition itself." *Id.* at 100– 01. In the case of *In re Ponn Realty Trust*, 4 B.R. 226, 228 (Bkrtcy.D.Mass. 1980), the court stated:

> A hearing on the motion to dismiss was conducted, however, no evidence was produced by the parties at that hearing. Although both parties attempt to argue facts in their briefs, the court does not accept these arguments as evidence of "cause" under 11 U.S.C. § 1112 and, therefore, the court's determination will of necessity be based upon the petition, schedules, statements of affairs and admissions in open court.

In the case of *In re Saco Local Development Corp.*, 30 B.R. 862 (Bkrtcy.D.Me. 1983), the court concluded that the usual requisites of judicial notice found in Federal Rule of Evidence 201 are "not readily applicable to the bankruptcy situation," and concluded:

> [I]t is appropriate to take judicial notice of the debtor's bankruptcy case as a whole, including the documents filed in this case. A bankruptcy case is unique because it is composed of many individual parts.... In addition, bankruptcy judges would be remiss if they did not take this information into consideration. Bankruptcy judges may be the only individuals involved in a bankruptcy with an overall view of the case.

*Id.* at 865.

In this district, it is clear that judicial notice has been taken of documents in the bankruptcy file. In the case of *In re Love*, 38 B.R. 771 (Bkrtcy.D.Mass.1984), appellant's primary argument on appeal was to the effect that appellee had introduced no evidence at trial. It appears that Judge Stewart announced during the hearing that he was taking judicial notice of the entire file:

> Examination of the transcript of the proceedings before the Bankruptcy Judge show that the Bankruptcy Judge took judicial notice of the debts scheduled and of all the files and records of the bankruptcy proceeding. It was proper for him to do so. Those files and the admissions contained in appellant's answer to appellee's complaint support all of the factual circumstances stated in appellant's brief which we have adopted.

*Id.* at 771. In *Matter of Gervich*, 570 F.2d 247, 253 (8th Cir.1978), it is unclear whether the parties were alerted to the fact that judicial notice was being taken, for the court simply stated that "[t]he bankruptcy court properly took judicial notice of the bankrupt's verified schedule of creditors." Nor is it clear at what point Judge Barker decided to take judicial notice of a fact in reaching a decision in *In re Hollander*, 25 B.R. 905, 911 (Bkrtcy.W.D.Mo.1982), for he simply stated that "[t]his court takes judicial notice of the fact that the Hollander bankruptcy estate includes several claims by creditors with no interest in the fact other than in its status as an asset...." On the other side of the issue, there is a line of cases descended from *In re Aughenbaugh*, 125 F.2d 887 (3d Cir.1942), which holds that due process entitles the parties at a hearing to know what evidence is being relied upon so that they may have an opportunity to rebut; thus, any evidence not formally introduced is excluded from consideration. *Accord In Re Birchminster Corp.*, 6 B.R. 258, 260–61 (Bkrtcy.E.D. Pa.1980); *In Re Ratmansky*, 7 B.R. 829, 832 (Bkrtcy.E.D.Pa.1980); *In Re Schramm*, 12 B.R. 608, 610 (Bkrtcy.E.D. Pa.1981); *In Re Miller*, 15 B.R. 977, 979 (Bkrtcy.E.D.Pa.1981).

I have no doubt that the bankruptcy court, like any other court, has authority to take judicial notice of its own files and records, but given that the items contained in these records are often not the ordinary

fare of judicial notice subject matter, *see* F.R.Evid. 201(b), I believe it only reasonable that the disadvantaged party be afforded notice and an opportunity to respond. This approach represents a middle ground between *Saco* and *Aughenbaugh* which retains the logic of *Saco*, in that the full panoply of information available to the bankruptcy judge may be brought to bear on a contested issue, and at the same time, accommodates the due process concerns reflected in *Aughenbaugh.*

■ Applying this framework to the case at hand, I believe several observations are in order. First, there seems to be some question as to whether the insolvency issue was contested prior to appeal. Moreover, given the disparate views of authorities on judicial notice, it was not unreasonable for appellants to assume that the entire record of their bankruptcy action would be reviewed in reaching a decision. The bankruptcy court did consider the schedules filed with the Chapter 13 proceeding in performing its "reasonably equivalent value" analysis. It appears from the limited record before me that the schedules were not introduced at trial, nor was the issue of judicial notice raised by the court or the parties. Under the circumstances, I believe the appropriate course of action would have been for the court to advise the parties that it was contemplating taking judicial notice of specific documents and allowing them to show cause why it should not do so. For the foregoing reasons, it is accordingly

ORDERED that appellee's motion to strike be denied; and it is

ORDERED that the bankruptcy court's decision is reversed and the cause remanded for a new hearing on appellant's complaint to set aside the foreclosure sale.

## ORDER ON SECOND APPEAL

WHIPPLE, District Judge.

This matter comes before the court on appeal from a bankruptcy court decision denying appellants' complaint to set aside a foreclosure sale pursuant to 11 U.S.C. § 548. Appellant asserts the bankruptcy court failed to comply with an order entered March 30, 1987, by the late Honorable Ross T. Roberts, United States District Judge, directing the bankruptcy court to conduct a further hearing on the matter in dispute. For the reasons stated below, the decision of the bankruptcy court will be reversed again and the cause will be remanded again for further proceedings consistent with this order and with the order of March 30, 1987.

### I. *Statement of the Case*

The property in dispute is appellants' residence, which they owned for some 32 years, having purchased it for $1,500.00. It consists of two houses situated on four acres of land. On July 3, 1984, appellants borrowed $2,250.00 from First State Bank of Joplin, and secured the loan with a deed of trust on their home. On August 1, 1985, the bank foreclosed on the residence to recover an outstanding balance due of $1,961.52. At the foreclosure sale on October 10, 1985, Paul and Betsy Williamson were the successful bidders for the sum of $4,500.00. The balance due on the note, together with interest and the cost of the sale, brought the bank's tally to $2,684.18. The bank retained the remaining $1,815.82 as its "lawful profit."

In March of 1986, appellants filed a voluntary Chapter 13 petition and, on April 3, 1986, filed a complaint to have the foreclosure set aside. The transfer of an interest in property made within one year of the date of the filing of a bankruptcy petition may be avoided if the debtors (A) received less than a reasonably equivalent value in exchange for the property, and (B) were insolvent on the date of the transfer or were rendered insolvent as a result of the transfer. 11 U.S.C. §§ 548(a)(2)(A) and 548(a)(2)(B)(i).

The bankruptcy court found the transfer was not for a reasonably equivalent value, but that the debtors had failed to establish insolvency:

> The trouble with plaintiffs' claim, however, is that no evidence of insolvency has been shown. The plaintiffs did not even advert to the schedules in this regard ... It seems an unfortunate result

922

under the circumstances, but this court, as any other court, can decide these cases only on the basis of the evidence properly submitted to it. And there being no evidence of insolvency, the transfer cannot be regarded as fraudulent within the meaning of § 548(a)(2) of the Bankruptcy Code.

Thus, rather than avoiding the sale, the bankruptcy court simply ordered the bank to return the excess sum of $1,815.82 to appellants. That order was appealed. As a threshold matter, appellee moved to strike the debtors' joint Chapter 13 petition, and accompanying documents and filings, the bank's objection to the confirmation of the debtors' plan and motion to dismiss, the debtors' reply to the bank's objection and motion, and the docket sheet for the bankruptcy file. Appellees argued that these items were not offered or received in evidence during the adversary proceeding, nor were they the subject of a request to take judicial notice. Appellants countered that the adversary proceeding was part of an integrated whole, and noted that the bankruptcy judge used the value placed upon the residence in the schedules filed in connection with the Chapter 13 petition in determining whether a reasonably equivalent value was obtained at the foreclosure sale.

In reaching his conclusion in the March 30, 1987, order, Judge Roberts recognized an apparent incongruity. That is, the bankruptcy judge took judicial notice of the court records to determine whether a reasonably equivalent value was obtained in the foreclosure sale. However, the bankruptcy judge did not take judicial notice on the issue of insolvency to determine whether the sale could be avoided. Judge Roberts stated:

* * * First, there seems to be some question as to whether the insolvency issue was contested prior to appeal. Moreover, given the disparate views of authorities on judicial notice, it was not unreasonable for appellants to assume that the entire record of their bankruptcy action would be reviewed in reaching a decision. The bankruptcy court did consider the schedules filed with the Chapter 13 proceeding in performing its "rea-

sonably equivalent value" analysis. It appears from the limited record before me that the schedules were not introduced at trial, nor was the issue of judicial notice raised by the court or the parties. Under the circumstances, I believe the appropriate course of action would have been for the court to advise the parties that it was contemplating taking judicial notice of specific documents and allowing them to show cause why it should not do so. * * *

Judge Roberts concluded by denying appellees' motion to strike, and by ordering that the bankruptcy court's decision was reversed and the cause remanded for a new hearing on appellant's complaint to set aside the foreclosure sale.

On August 5, 1987, the bankruptcy court entered its findings of fact, conclusions of law and final judgment, again denying plaintiffs' complaint. This second appeal to district court followed, challenging whether the bankruptcy court erred and asserting a failure to comply with the order entered by Judge Roberts.

II. *Discussion*

A. Judicial Notice

■ The bankruptcy court misinterpreted the district court's order on some key points. First, the bankruptcy court stated:

It seemed to be the sense of the district court, in issuing the order of reversal and remand, that a bankruptcy court should always take judicial notice of the court file if a party fails to prove an element of its claim or defense which might have been proven by resort to the court file.

The bankruptcy court then concluded, quite correctly, that such a rule might well impose a nearly impossible burden upon bankruptcy judges and would seem to cause unfair and unnecessary intrusion of the judiciary in the conduct of the trial of cases by counsel for the respective parties. The bankruptcy court's misinterpretation is in expanding the district court's specific observation into a general, universal rule.

Judge Roberts clearly stated that *"under the circumstances"* it would have

been better to advise the parties of what matters the bankruptcy court would propose to take judicial notice. The peculiar circumstances here are that there was no testimony or other evidence on the two critical issues concerning the ultimate question, that is, whether equivalent value was paid and whether the plaintiffs were insolvent at the time the property was sold. Perhaps the lack of evidence on those outcome-determinative points is due to the purposeful strategy of the parties. Perhaps it is due to lack of preparation by the parties' counsel. In any event, the bankruptcy court was faced with making a decision on the basis of no evidence, save what was judicially noticed from the court file.

Certainly a judge cannot be expected to inform parties in advance of the factors to be relied upon in making a decision. However, under these circumstances, some clue from the court about what judicial notice was contemplated (as suggested by Judge Roberts) may have alerted the parties to the need to produce some evidence upon which a decision could be made. A judge is not powerless to recite the decisive test and inquire whether all available evidence has been submitted. Just as attorneys—being officers of the court—assist the court, a judge can promote justice by encouraging counsel to elicit enough evidence to render decisions on the basis of evidence rather than lack of evidence. Such detached encouragement would provide valuable assistance in achieving justice, and need not be an undue intrusion into the province of counsel for the parties (as suggested in the bankruptcy court's order.)

In this instance, to be sure, the plaintiffs bore the burden of bringing forth evidence to support their claim. In the strictest possible terms, a judgment could be rendered on the basis of plaintiffs' failure to produce anything supporting their claims. Yet, the remarkably brief hearing yielded no evidence at all, in favor of either plaintiffs or defendants, upon which to base a decision. A simple inquiry of counsel, about whether there was any evidence on the issues of equivalent value and insolvency, easily could have resolved the complaint on the merits two years ago. Rather, the bankruptcy court selected facts from the file for judicial notice and, on that basis, found that equivalent value had not been paid but that there was no evidence of whether plaintiffs were insolvent when foreclosure occurred. Indeed, the bankruptcy court specifically recognized the record's silence on that latter point. In the August 5, 1987, judgment, at pages 2–4, the bankruptcy court noted that the plaintiffs' asset schedules concerned insolvency on the date of filing, but did not concern insolvency on the foreclosure date. Thus, there was no evidence in the hearing, or in the court file, upon which to make the determination. Certainly the slightest bit of guidance by the court at the hearing ultimately would have lightened the bankruptcy court's burden in making a fair decision on the basis of evidence.

### B. Additional Evidence

■ A second point upon which the bankruptcy court erred is the belief that additional evidence cannot be adduced after trial without a showing that it is newly discovered evidence or evidence which could not be discovered with due diligence. It was apparently on that basis that the bankruptcy court elected not to conduct a hearing, despite the clear mandate in Judge Roberts' order.

Bankruptcy Rule 8013 provides that, on an appeal, the district court may remand with instructions for further proceedings. The plain language of Judge Roberts' order of March 30, 1987, included instructions that further proceedings occur, that is, a new hearing. The order stated clearly that there remained a question as to whether the insolvency issue was contested. The order further noted that the Chapter 13 schedules were used in the equivalent-value analysis, apparently in the absence of evidence on that point at the hearing. The directions contained in the order were simple: A hearing was to be conducted on the matters of insolvency and on equivalent value. Notwithstanding the clarity of those instructions, they were construed to mean that no hearing was necessary.

**924**

### III. *Conclusion*

 In its appeal brief, the appellee bank characterizes this action as one in mandamus, and asserts that appellants have not met the requirements of a mandamus action. This court disagrees. Rather than seeking compliance with a prior order, this appeal concerns whether the bankruptcy court erred in rendering its final judgment after that order was issued. For the reasons cited above, this court believes the judgment was in error. For the reasons stated above, and in Judge Roberts' order, this court believes the judgment was clearly erroneous and not supported by the record. As stated above, the error was in rendering a decision without an evidentiary basis. Just as Judge Roberts noted, it will be necessary to afford the parties the opportunity to submit further evidence to assist the bankruptcy court in making a fair determination on the basis of evidence, rather than lack of it. Yet, this order is not directing compliance with a prior order. Rather, it is a new order in a new appeal which directs that a new hearing be conducted.

This court is certain that, upon conducting a hearing, the bankruptcy court will have a sufficient basis in fact to assist in rendering a fair decision. In hopes that such confidence is not misplaced, the debtors' motion to withdraw reference will be denied so that the bankruptcy court can continue to perform its vital function within the guidelines set by the district court. Recognizing the peculiar circumstances attending this matter, debtors' motion to supplement their brief with a table of contents and table of authorities will be granted.

It is

ORDERED that debtors' motion, filed January 5, 1988, to supplement their appeal brief is granted. It is further

ORDERED that debtors' motion, filed December 18, 1987, to withdraw the reference from bankruptcy court is denied. It is further

ORDERED that the bankruptcy court's judgment, entered August 5, 1987, is reversed. It is further

ORDERED that this cause is remanded for a new hearing within 45 days of the date of this order on appellant's complaint to set aside the foreclosure sale so that the parties may submit to the bankruptcy court evidence on the issues of equivalent value and insolvency as discussed above.